## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**BRANDEN GULLA,**                                    **Case No.: 1:22-cv-4425**

        *Plaintiff,*

**v.**

**CHICAGO STATE UNIVERSITY**
**by and through the Board of Trustees**
**(in their official and individual capacities);**
**ZALDWAYNAKA SCOTT, in his official**
**and individual capacity; MATTHEW FETE,**
**in his official and individual capacity;**
**ANTOINE JENKINS, in his official and**
**individual capacity; VICKY SHAH, in her**
**official and individual capacity; LALITA**
**PRASAD-REDDY, in her official and individual**
**capacity; ALLISON ROSE, in her official**
**and individual capacity; and MOHAMMAD**
**NEWAZ in his official and individual capacity,**

        *Defendants.*

---

## COMPLAINT AND JURY DEMAND

### I. BACKGROUND

1.    This is an action arising from Plaintiff's wrongful dismissal from Chicago State University. Plaintiff is seeking damages for Defendants' violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. §1983 and violation of the Article I,

Section 2 of the Illinois Constitution, breach of contract, negligence, and negligent infliction of emotional distress.

## II. <u>PARTIES</u>

2. Plaintiff Branden Gulla ("Plaintiff") is a resident of Michigan and formerly a student of Chicago State University ("CSU") in the College of Pharmacy.

3. Defendant Chicago State University ("CSU") is a public university located in Chicago, Illinois. CSU receives federal funds as a public institution and is governed through its Board of Trustees. CSU has received federal funding at all times relevant to this litigation.

4. Defendant Zaldwaynaka Scott ("Scott") is the President of Chicago State University.

5. Defendant Matthew Fete ("Fete") is the Dean of the College of Pharmacy.

6. Defendant Antoine Jenkins ("Jenkins") was at all times relevant to this case an employee or agent of Defendant Chicago State University.

7. Defendant Vicky Shah ("Shah") was at all times relevant to this case an employee or agent of Defendant Chicago State University.

8. Defendant Lalita Prasad-Reddy ("Reddy") was at all times relevant to this case an employee or agent of Defendant Chicago State University.

9.  Defendant Allison Rose ("Rose") was at all times relevant to this case an employee or agent of Defendant Chicago State University.

10. Defendant Mohammad Newaz ("Newaz") was at all times relevant to this case an employee or agent of Defendant Chicago State University.

### III.  JURISDICTION & VENUE

11. This action arises under the law of the United States. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. §1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

12. In accordance with 28 U.S.C. §1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

13. Additionally, this court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is diversity of citizenship between the parties and the amount of controversy exceeds 75,000.

14. Defendant CSU conducts business within the State of Illinois.

15. The other Defendants on the grounds that they were employees of CSU at all times relevant to this action and personally violated certain rights and policies, the effects of which were felt in the State of Illinois.

16. Venue in this action is proper in the District Court because the events relevant to this action occurred primarily within the geographical confines of the Northern District of Illinois. CSU is located and conducts business in the Northern District of Illinois.

## IV. FACTUAL ALLEGATIONS

17. Plaintiff enrolled in the College of Pharmacy of Defendant CSU in August of 2017.

18. By March 2020, he had completed over three years of CSU's four-year program for a degree as a Doctor of Pharmacy.

19. By that time, Plaintiff had incurred over $150,000 in student loan debt.

20. As a graduate Doctor of Pharmacy, Plaintiff would have been likely to earn $130,000 a year, which is approximately the median income in a hospital setting.

21. Plaintiff would have been likely to begin to earn such annual income, had he been allowed to continue his rotational internships as a student and obtain his doctorate as he anticipated in May 2021.

22. Plaintiff often earned A's in his course work and had never failed a course.

23. Plaintiff suffers from the medical condition or disability of ADHD.

24.   Plaintiff reported his ADHD to CSU, at least some persons at CSU were aware of his condition.

25.   While a disability within the meaning of the Americans with Disability Act and the Rehabilitation Act, his condition does not interfere with his ability to successfully complete the College of Pharmacy program or to be employed after graduation as a pharmacist.

26.   The second semester of Plaintiff's P3 year, Plaintiff was enrolled in DMTM2 with Professor Jenkins.

27.   Grading for DMTM2 consisted of 5 patient applications referred to as "SOAP Notes" in which the student had to determine the subject, objective, assessment, and plan for a hypothetical patient, 2 exams and 1 class presentation.

28.   Defendant Jenkins set Plaintiff up for failure when he canceled numerous classes during the semester. The classes were never made up. Placing all students, Plaintiff in particular, in a likely to fail position within the class.

29.   Prior to the start of the first examination, Professor Jenkins yelled out to the classroom "Ya'll don't know shit".

30. Another student proceeded to ask Professor Jenkins if the examination should be completed in ink pen. To which Professor Jenkins yelled "you guys can use crayons if you want".

31. The examination for the course was completed on Examsoft.

32. Plaintiff completed the examination on the required ExamSoft software, turning in his signed notes prior to leaving the examination room.

33. CSU procedures require students to sign and date all scratch paper used while taking an examination and turn it in at the end of the examination.

34. Professor Jenkins gave Plaintiff a failing grade on the examination due to not writing out calculations in ExamSoft.

35. In prior examinations points were not deducted for failing to show diabetes calculations on scrap paper or on the examination as the calculations are of an elementary level.

36. Plaintiff's ADHD requires him to write out mathematical equations to maintain focus. All mathematical calculations above the elementary level calculations were written out during examinations.

37. The diabetes calculations required were elementary mathematics and were completed on Plaintiff's signed scratch paper as was customary for these types of calculations.

38. Defendant Jenkins awarded credit for the diabetes examination questions then subsequently removed the diabetes questions from the examination scores three weeks later. This resulted in Plaintiff failing the examination by 0.5%.

39. Plaintiff sought an examination review. The professors failed to appear for the examination review. Had the panel of professors sat for an examination review with the Plaintiff it is probable that the points deducted would have been returned to Plaintiff, which would have allowed Plaintiff a passing grade.

40. Plaintiff promptly filed a grievance with CSU.

41. Plaintiff subsequently filed an Appeal of the grievance.

42. Defendant Rose failed to process the appeal pursuant to CSU policy and procedure.

43. While the Appeal was still pending, Plaintiff registered to re-take his P3 year as to continue furthering his education, while anticipating an approved appeal resulting in a registration change to P3.

44. The appeal was dismissed as untimely stating that Plaintiff did not follow the required steps of contacting CSU timely, although Plaintiff was in contact with the office within 10 days with continuing conversations thereafter.

45.   Plaintiff was advised by Defendant Newaz that Plaintiff was not allowed his attorney or student advisor to be present during the grievance/appeal process.

46.   Plaintiff advised Defendant Newaz that the student handbook allowed for the presence of Plaintiff's attorney and student advisor. Defendant Newez stated "that's the student handbook".

47.   Plaintiff was required to appeal his grievance without this attorney or student advisor, a direct breach of CSU's policies and procedures.

48.   In order to further his education, Plaintiff followed through in repeating his P3 year of pharmacy school at CSU.

49.   Second semester of Plaintiff's repeated P3 year brought Plaintiff again found himself enrolled in DMTM2. The course was taught by Professor Shah and Professor Jenkins.

50.   In anticipation of repeating DMTM2, Plaintiff studied the entirety of his prior notes prior to the start of the semester.

51.   Plaintiff successfully completed all assignments up until the second examination.

52.   Plaintiff scored higher than the average on both class examinations. The class average on exams is between a 40-50%.

53.   Plaintiff planned to meet with Professor Jenkins to discuss his examination grade at Professor Jenkins' examination review period. Professor Jenkins failed to attend his own examination review period.

54.   Plaintiff was left without the remediation procedures outlined in CSU's policies and procedures.

55.   Plaintiff's final grade in DMTM2 was a 69.5%.

56.   Plaintiff sent Defendant Shah and Defendant Jenkins a re-grade request. The request included proof of correct answers from journal articles, clinical trials, and information from the American Heart Association.

57.   Defendant Shah and Defendant Jenkins denied Plaintiff's re-grade request.

58.   Plaintiff started his first pharmacy rotation with the University of Chicago Hospital.

59.   Two days before Plaintiff was set to successfully complete his rotation at the University of Chicago Hospital Plaintiff was notified that he was dismissed from CSU, immediately ending his rotation.

60.   Defendant Reddy informed Plaintiff that dismissals were on a case-by-case basis and not to worry.

61.   Defendant Reddy proceeded with the dismissal.

62.   Plaintiff was dismissed from CSU in May of 2021.

63. Defendant Zaldwaynaka Scott, with actual knowledge of the policies and procedures of CSU and knowledge of the handling of students in his care at CSU failed to correct the wrongdoings occurring to Plaintiff and other students.

64. After the dismissal, Plaintiff through counsel sought to contact CSU. No correspondence has been returned.

**Respondeat Superior and Agency**

65. Under Federal and Illinois law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

66. At all times relevant to this action, all individual Defendants were employed by CSU. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with CSU.

67. At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities

and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### SECTION 504 OF THE REHABILITATION ACT

68. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

69. As set forth in Section 504 of the Rehabilitation Act, no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program of activity receiving federal assistance.

70. CSU is a public university. CSU receives federal funds as a public institution and is subject to Title II of the Americans with Disabilities Act.

71. Title II of the Americans with Disability Act, 29 U.S.C. § 12132, which is co-extensive with the anti-discrimination provision of Section 504 of the Rehabilitation Act state that no qualified individual with a disability, shall solely by reason of disability, be excluded from participation in any program of state or local government.

- 11 -

72.  Plaintiff suffers from a disability as that term is defined under Section 504 of the Rehabilitation Act and Title II of the ADA, in that he has ADHD.

73.  Plaintiff is a disabled individual and has been diagnosed with ADHD. ADHD is a learning disability that substantially limits Plaintiff's ability to engage in major life activities, such as learning and reading.

74.  However, he is in no way unable to do the course work of the College of Pharmacy.

75.  As set forth above, the Defendant CSU placed Plaintiff on academic probation solely because of his disability – specifically, due to Plaintiff's ADHD he completes arithmetic notes on paper during exams and turns them in, as allowed, Professor Jenkins verbally abused Plaintiff and failed him from the exam due to Professors Jenkins disorganization of his course.

76.  By being placed on academic probation, solely because of Professor Jenkins hostility to Plaintiff because of his disability, defendant CSU and its administration and faculty set him up and achieved his ultimate dismissal from the College.

77.  Defendant CSU ratified the decision of Professor Jenkins to exclude Plaintiff from the course, requiring him to retake the required course and

setting him up in a hostile environment with an ineffective instructor aware of his disability making him likely to fail.

78. After Plaintiff's dismissal CSU reorganized the entirety of the course, including removing Dr. Jenkins as the course coordinator. The course was subsequently removed from CSU's curriculum.

79. At the time of his dismissal, due to the "F" in Professor Jenkins' course, Plaintiff had completed three years of the program in a satisfactory manner and had incurred over $160,000 in student debt.

80. He was qualified to participate in the academic programs of CSU, including the College of Pharmacy.

81. Plaintiff was dismissed from CSU solely because of his disability, in violation of Section 504 of the Rehabilitation Act and Title II of the ADA, and, but for his disclosure of that disability, and the academic discipline that followed, he would have graduated from the College of Pharmacy and would now be working as a licensed pharmacist today.

82. He has been treated by CSU in a malicious manner and denied the formality of a hearing of his filed appeal.

83. Plaintiff is now playing interest on his debt of over $160,000 because he no longer is a student.

84.   Plaintiff has now lost the income he would have received as a Doctor of Pharmacy at the rate of $144,000 a year had he been allowed to continue in his internships and graduate as anticipated in May of 2021.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Reinstate Plaintiff as a student in the College of Pharmacy and restrain defendant from any further violations of Section 504 of the Rehabilitation Act and Title II of the ADA, or other actions against him because of his disability, and require defendant to make any reasonable accommodation – in any – that may be necessary with respect to such disability, and refrain from further discriminatory acts in violation of federal law to prevent him from graduation from the College.

(c)   Order defendant to remove the "F" in Professor Jenkins course and the academic probation which he received solely because of Plaintiff's disability.

(d)  Enjoin defendant CSU from any further acts of discrimination in violation of Section 504 of the Rehabilitation Act.

(e)  Grant Plaintiff compensatory damages from CSU under Section 504 of the Rehabilitation, including but not limited to damages for lost income that he would have had as a pharmacist and other consequential and foreseeable damages.

(f)  Grant Plaintiff compensatory damages from CSU for the yearly tuitions for Plaintiff wrongfully being required to retake a year of the program.

(g)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(h)  Grant such other and further relief as justice requires.

## SECOND CAUSE OF ACTION
### 42 U.S.C. §1983
**(Defendant CSU)**

85.  Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

86.  In violation of §1983, defendant CSU has deprived Plaintiff of his rights to equal protection and due process under the Fourteenth Amendment in

that defendant willfully treated Plaintiff in a disparate manner because he has a type of disability that stigmatizes Plaintiff and others like him in and educational setting in the judgment of defendant CSU and its administrators and faculty.

87. By stigmatizing Plaintiff and those like him with this condition, in violation of §1983 the defendant CSU deprived him of his right to equal protection of the laws without any substantial or justified basis treating him in this disparate manner.

88. In further violation of §1983 defendant CSU also denied him of the right to due process before deprivation of his contractual right as a student of CSU on the verge of graduation from the program, with over $160,000 invested in his education, and denied him even the due process of the hearing procedure set out in the College of Pharmacy Student Handbook.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, removal of Plaintiff's failing grade from his official transcript, as well as readmitting Plaintiff to CSU to finish his clinical rotations;

(b) Grant such other and further relief as justice requires.

## THIRD CAUSE OF ACTION
## 42 U.S.C. §1983

89. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

90. Plaintiff had a constitutionally protected and clearly established property interest in his continued education at CSU after entering into a contract with CSU.

91. Plaintiff and Defendant CSU entered into a contract by which CSU offered admission to Plaintiff to receive his Pharmacy degree in exchange for Plaintiff's paid tuition.

92. Plaintiff accepted Defendant's offer and attended CSU as a student.

93. There was a mutual exchange of consideration for which Plaintiff attended CSU involving payments and expenditure of time as well as CSU making its service including educational opportunities available to Plaintiff.

94. Plaintiff had a constitutionally protected and clearly established liberty interest. "The Due Process Clause… forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal

requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). The dismissal from CSU was detrimental to Plaintiff's good name and reputation for his future academic and professional career.

95. In violation of §1983, defendant CSU has deprived Plaintiff of his rights to equal protection and due process under the Fourteenth Amendment in that defendant willfully treated Plaintiff in a disparate manner because he has a type of disability that stigmatizes Plaintiff and others like him in and educational setting in the judgment of defendant CSU and its administrators and faculty.

96. By stigmatizing Plaintiff and those like him with this condition, in violation of §1983 the defendant CSU deprived him of his right to equal protection of the laws without any substantial or justified basis treating him in this disparate manner.

97. In further violation of §1983 defendant CSU also denied him of the right to due process before deprivation of his contractual right as a student of CSU on the verge of graduation from the program, with over $160,000 invested in his education, and denied him even the due process of the hearing procedure set out in the College of Pharmacy Student Handbook.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)  Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)  Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to CSU to finish his degree;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

### FOURTH CAUSE OF ACTION
### Violation of Article I, Section II of Illinois Constitution

98.   Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

99.  The individual defendants have acted in excess of their authority under the Illinois Constitution and breached the obligations of their office to Plaintiff as a student enrolled in CSU by dismissing him from the College

- 19 -

for no reason but his disability and denying him even the right to appeal such action.

100. The individual defendants by such acts have also unlawfully violated his rights under the due process and equal protection clauses of Article I, Section 2 of the Illinois Constitution.

101. Defendants have unlawfully condoned the discrimination against him as a student by reason of his disability, in violation of Article I, Section 2 of the Illinois Constitution and the public policy of the State of Illinois and their duties as administrators of state-supported institutions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enjoin Defendants from further violations of Article I, Section 2 of the Illinois Constitution;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## FIFTH CAUSE OF ACTION
### Breach of Contract

102. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

103. Plaintiff and Defendant CSU entered into a contract by which CSU offered admission to Plaintiff on specific terms.

104. Plaintiff accepted Defendant's offer and attended CSU as a student.

105. There was a mutual exchange of consideration for which Plaintiff attended CSU involving payments and expenditure of time as well as CSU making its services including educational opportunities available to Plaintiff.

106. Defendant CSU breached their policy and procedures when it failed to provide Plaintiff with due process.

107. As a direct and proximate result of Defendant CSU's actions, Plaintiff was dismissed from CSU and has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

    (a)   Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental

anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to CSU to finish his degree;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

### SIXTH CAUSE OF ACTION
### Negligence

108.  Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

109. Defendant Jenkins and Defendant Shah were negligent in performing their duty or reasonable care and failed, neglected and/or refused to discharge their duty properly and fully by, among other things:

a)  Evaluating Plaintiff's examination.

- 22 -

110. Defendants Rose and Reddy were negligent in performing their duty of reasonable care and failed, neglected and/or refused to discharge their duty properly and fully by, among other things:

    a) Failure to follow policy and procedure in grievance procedure;

    b) Failure to follow policy and procedure in dismissal procedure.

111. Defendant CSU was negligent in performing its duty of reasonable care and failed, neglected and/or refused to discharge its duty properly and fully by, among other things:

    a) Failing to ensure that Plaintiff's contractual educational services were being provided as per the terms of the contract;

    b) Failing to assist Plaintiff after being informed of the individual Defendant's negligence.

112. By their negligent conduct, Defendants directly and proximately caused Plaintiff financial harm. Plaintiff is confronted with an inability to complete his education, practice in his chosen profession, obtain the income of a pharmacist and to pay his mounting student loan debts. Plaintiff has suffered direct and financial losses due to Defendants' conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to CSU to finish his degree;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

### SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

113. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

114. Defendants' actions caused Plaintiff emotional distress, worrying about his future academic, professional career and financial future.

115. Defendants should have known their actions would be injurious to Plaintiff.

116. Defendants' actions violated CSU's policies and procedures.

117. Defendants' actions proximately caused Plaintiff's injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiffs for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to CSU to finish his degree;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues stated in this action.

- 25 -

Date: August 19, 2022                    Respectfully Submitted,


Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*