# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRANDEN GULLA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:22-cv-4425 |
| ) | |
| v. ) | Honorable Andrea R. Wood |
| ) | |
| CHICAGO STATE UNIVERSITY, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

TABLE OF CONTENTS

FACTS ALLEGED ................................................................................................................... 1
ARGUMENT .............................................................................................................................. 4
    I.    Standard of Review ....................................................................................................... 4
    II.    Plaintiff's Rehabilitation Act and ADA Claim (Count I) Should Be Dismissed ............... 4
        A.    Plaintiff is not otherwise-qualified. ....................................................................... 5
        B.    Plaintiff was not excluded on the basis of his disability ................................................ 5
    III.    Plaintiff's Constitutional Claims (Counts II-IV) Should Be Dismissed. .......................... 8
        A.    Defendants are entitled to sovereign and qualified immunity. .................................... 8
        B.    Plaintiff fails to state an equal protection claim. .......................................................... 9
        C.    Plaintiff fails to state a Due Process claim. ............................................................... 10
            1.    Plaintiff has not alleged a property interest. .......................................................... 10
            2.    Plaintiff has not alleged a liberty interest. ............................................................. 11
            3.    Plaintiff received constitutionally-sufficient process ............................................. 11
    IV.    Plaintiff's State Law Claims (Counts V-VII) Should be Dismissed. ............................. 12
        A.    Defendants are Immune from Suit in Federal Court on the State Law Claims. .......... 12
        B.    Plaintiff's Breach of Contract Claim Should Be Dismissed ....................................... 12
            1.    Plaintiff fails to identify the contract or how it was breached. ............................... 12
            2.    Plaintiff fails to allege that CSU acted arbitrarily, capriciously, or in bad faith ..... 14
        C.    Plaintiff's Negligence Claim Should Be Dismissed. .................................................. 14
        D.    Plaintiff's Negligent Infliction of Emotional Distress Claim Should Be Dismissed. 15
**Conclusion** ................................................................................................................................. 15
**CERTIFICATE OF SERVICE** ................................................................................................ ii

In response to the Defendants' motion to dismiss his initial complaint (Docs. 15, 16), Plaintiff filed an Amended Complaint. The Amended Complaint, however, like its predecessor, fails to state a claim upon which relief may be granted. The additional factual allegations added in the Amended Complaint do not render his otherwise unactionable claims cognizable. Plaintiff's Amended Complaint therefore should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)—and such dismissal should be with prejudice, as Plaintiff's Amended Complaint is "redundant, immaterial, or unresponsive" to the deficiencies identified in Defendants' initial motion to dismiss. *See Compania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002); *see also Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

## FACTS ALLEGED[1]

Plaintiff enrolled in the Doctor of Pharmacy program at Chicago State University's ("CSU" or the "University") College of Pharmacy in August 2017. Am. Compl. ¶¶ 17-18. Plaintiff reported his diagnosis of ADHD to the CSU Abilities Office and received accommodations, detailed in an Accommodation Letter. *Id.* at ¶ 25, 39. Plaintiff does not identify what accommodations he requested or received, other than "extended time." *See id*. at ¶¶ 25, 39.

In the spring semester of 2020 (his third year of the program, or "P3"), Plaintiff was enrolled in a course titled "DMTM2," taught by Professor Antoine Jenkins. *Id.* at ¶ 27. Plaintiff provided Professor Jenkins with his Accommodation Letter, and there are no allegations that Professor Jenkins failed to provide Plaintiff with any of the accommodations identified therein. *See id.* at ¶¶ 28, 39. According to Plaintiff, Professor Jenkins routinely canceled class, once yelled to the class, "Ya'll don't know shit," and told another student, "you guys can use crayons if you want." *Id.* at ¶¶ 30-34. Plaintiff alleges that this conduct caused him anxiety. *Id.* at ¶ 34.

---

[1] Defendants strongly dispute many allegations in the Amended Complaint but assume them to be true solely for purposes of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the DMTM2 course, students were required to complete five assignments, two exams, and one class presentation. *Id.* at ¶ 29. One exam included "diabetes examination questions" which required the students to complete mathematical calculations. *Id.* at ¶¶ 43, 45. Plaintiff alleges that due to his disability of ADHD, he must "write out mathematical equations to maintain focus," but only for those equations that are "above the elementary level." *Id.* at ¶ 44. Plaintiff does not allege he ever sought or received an accommodation for such, nor does he allege that he was prohibited from writing out his equations. On the exam in question, Professor Jenkins required students to write out their calculations. *Id.* at ¶ 42. Yet, Plaintiff either did not write out the equations he deemed to be "elementary level" and/or only wrote out equations on scrap paper rather than within the ExamSoft program through which the exam was taken. *Id.* at ¶¶ 38, 42, 44.

Although Professor Jenkins initially "awarded credit" for questions which required "diabetes calculations," three weeks later he "removed the diabetes questions from the examination scores." *Id.* at ¶ 45. It appears from the Amended Complaint that Professor Jenkins removed these questions from all students' exam scores, thereby decreasing the total points earned and the total points available for <u>all</u> students. *Id.* at ¶ 45. Without the credit from these "diabetes questions," Plaintiff's exam score changed to a failing grade. *Id.* Plaintiff intended to participate in an "examination review" period, but "the panel of professors" who were supposed to sit for the exam review failed to appear. *Id*. at ¶¶ 46-47. Plaintiff ultimately failed the course.

Plaintiff grieved his failing grade. *Id.* at ¶ 48. He does not state the outcome of the grievance, but it presumably was denied, as he then filed an appeal of the grievance. *Id.* at ¶ 49. According to Plaintiff, Allison Rose "failed to process the appeal" in a manner consistent with (an unidentified) "CSU policy and procedure." *Id.* at ¶ 50. Plaintiff states he was not allowed the

2

assistance of an attorney or advisor in his appeal, which he alleges was in breach of "CSU's policies and procedures." *Id.* at ¶ 57. Plaintiff's appeal was dismissed as untimely. *Id.* at ¶ 52.

As a result of failing DMTM2, Plaintiff repeated his P3 year for the 2020-2021 school year. *Id.* at ¶ 58.[2] He again took DMTM2 in the second semester of that year. *Id.* at ¶ 59. The course was taught by Professor Jenkins and Professor Vicky Shah. *Id.* Plaintiff "successfully completed all assignments up until the second examination" and "scored higher than the [class] average" of 40-50% "on both class examinations." *Id.* at ¶¶ 61-62. Plaintiff does not identify why he was unsuccessful on the second examination or what his grade on that examination was. *See id.* ¶¶ 61-62. After an unsuccessful second exam, Plaintiff planned to meet with Professor Jenkins to review his second exam, but Professor Jenkins did not attend this exam review. *Id.* at ¶ 63.

Plaintiff failed DMTM2 for a second time, with a score of 69.5%. *Id.* at ¶ 65. He filed a "re-grade request," which was denied. *Id.* at ¶¶ 66-67. Plaintiff proceeded with his first pharmacy rotation but then two days before completing the rotation, he was notified he would be dismissed from CSU. *Id.* at ¶¶ 68-69. Plaintiff alleges Lalita Prassad-Reddy told him "that dismissals were on a case-by-case basis and not to worry" but then "proceeded with the dismissal." ¶¶ 70-71.

After his dismissal, Plaintiff filed suit against the University and seven individual defendants (collectively "Defendants").[3] In both his original complaint and the Amended Complaint, Plaintiff seeks to allege the same seven claims: Count I for disability discrimination in violation of the Rehabilitation Act and the Americans with Disabilities Act; Counts II, III, and IV for violations of his right to due process and equal protection under the U.S. and Illinois constitutions; Count V for breach of contract; Count VI for negligence; and Count VII for negligent infliction of emotional distress ("NIED").

---

[2] At some point, Plaintiff was placed on "academic probation." *See* Am. Compl. ¶ 90.
[3] The Individual Defendants are Zaldwaynaka Scott, Matthew Fete, Antoine Jenkins, Vicky Shah, Lalita Prasad-Reddy, Allison Rose, and Mohammad Newaz. *See* Am. Compl. ¶¶ 4-10.

**ARGUMENT**

**I.     Standard of Review**

A motion under Rule 12(b)(6) asserts that the complaint does not plausibly suggest the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Where the well-pled facts do not permit the court to infer more than the possibility of misconduct, the complaint has not shown an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**II.    Plaintiff's Rehabilitation Act and ADA Claim (Count I) Should Be Dismissed.[4]**

Plaintiff argues that his failing grades and dismissal constitute disability discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.,* ("Rehab Act") and Title II of the Americans with Disabilities Act, 29 U.S.C. §§ 12132 *et seq*. (the "ADA"). To state a claim under the ADA or Rehab Act against CSU, Plaintiff must allege "(1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, [] (3) that he was either excluded from participating in or denied the benefit of that program based on his disability," and, with respect to the Rehab Act, (4) "that the program in which he was involved received federal financial assistance." *Novak v. Bd. of Tr. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). Plaintiff does not—despite the opportunity to amend— adequately plead that he is otherwise qualified, and the Amended Complaint also makes clear that Plaintiff's disability was not the reason he failed DMTM2 and was dismissed from CSU.[5]

---

[4] The ADA and Rehab Act do not provide for individual liability as a matter of law, so the Individual Defendants must be dismissed. *See e.g.*, *Brewer v. Wis. Bd. of Bar Exam's*, 270 Fed. App'x 418, 421 (7th Cir. 2008). CSU is also entitled to sovereign immunity under the ADA. *See id*.

[5] To plead he is disabled Plaintiff must allege he has "a physical or mental impairment that substantially limits one or more major life activities." *See Yates v. John Marshall L. Sch.*, No. 08 C 4127, 2009 WL

### A. Plaintiff is not otherwise-qualified.

"A person is qualified for a program if []he can meet its requirements, as reflected in the program's standards and the judgment of the faculty, with or without reasonable accommodations." *Gilfillan v. Bradley Univ.*, 854 F. App'x 729, 732 (7th Cir. 2021). "Academic decisions, such as whether a student is qualified for, or entitled to promotion within a program, must be left to the broad discretion of the academic institution." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018), *as amended on denial of reh'g* (Feb. 26, 2018). In *Khan*, the plaintiff's argument "that she was otherwise qualified because she had passed several classes in the [university's] program" was unpersuasive, as the "[t]he requirements for the medical degree program [] were not that she pass several classes, but that she not accumulate three failure equivalents in a single academic year." *Id.* at 845. Similarly here, although Plaintiff alleges he "was qualified to participate in the academic programs of CSU," Am. Compl. ¶ 95, he twice failed DMTM2. Thus, he does not meet CSU's standards and is not otherwise-qualified.

### B. Plaintiff was not excluded on the basis of his disability.

Even if Plaintiff had adequately pled that he was otherwise-qualified, Count I should be dismissed because his allegations do not support an inference that he was dismissed ***because of*** his disability. To meet this standard, Plaintiff must—and did not—plead that CSU "either (1) intentionally acted on the basis of disability, (2) refused to provide a reasonable modification to permit access to the program, or (3) enforced rules that disproportionally impacted disabled

---

1309516, at *5 (N.D. Ill. May 11, 2009). The Seventh Circuit has declined to decide whether concentration (*see* Am. Compl. ¶¶ 23) is a major life activity, *see Emerson v. Northern States Power Co.*, 256 F.3d 506, 511 (7th Cir. 2001), and other circuits are split, *see Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999); *Linser v. State of Ohio Dep't. of Mental Health*, No. 99-3887, 2000 WL 1529809 at *3 (6th Cir. 2000); *but see Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 569 (3rd Cir. 2002). Because Plaintiff is not otherwise-qualified and was not excluded on the basis of his disability, his claims fail regardless of whether he has adequately pled he is disabled.

people." *Thurmon v. Mt. Carmel High Sch.*, 191 F. Supp. 3d 894, 898-99 (N.D. Ill. 2016) (internal quotations omitted) (dismissing claim where "simply no suggestion" plaintiff's "disability was connected to any of Defendants' conduct or that Defendants' alleged failure to accommodate the disability was unreasonable or resulted in denying [Plaintiff] equal benefits.").

Plaintiff's claims fail for at least three reasons. *First*, Plaintiff fails to allege any facts that support an inference that Defendants "intentionally" treated him negatively based on his ADHD. Plaintiff fails to allege that he was singled out in any way, let alone on the basis of his disability. Plaintiff states that "Professor Jenkins verbally abused Plaintiff and failed him from the exam." Am. Compl. ¶ 90. However, Plaintiff's own allegations reveal that Professor Jenkins did not select Plaintiff for verbal abuse, but rather "yelled out across the classroom" at the entire class. *Id*. at ¶¶ 31, 34. Plaintiff received the same treatment as every other student in the classroom. The only individualized treatment Plaintiff alleges was his expulsion, which occurred because he had twice failed a class. Because Defendants never singled Plaintiff out for negative treatment, he cannot claim that they intentionally acted based on his disability.

*Second*, Plaintiff never alleges that CSU denied him any requested accommodation. According to Plaintiff, CSU provided him accommodations including extended time, and there are *no* allegations that he did not receive this accommodation. *See id.* at ¶¶ 25, 39. Although Plaintiff also alleges that he needed to "write out mathematical equations to maintain focus," *id.* at ¶ 44, he does not allege that he ever requested this accommodation. This alone dooms Plaintiff's claim. *See, e.g., Martin v. S. Ill. Univ. Sch. of Med.*, No. 16-CV-3294, 2017 WL 4780613, at *12 (C.D. Ill. Oct. 23, 2017) ("liability generally does not attach if the plaintiff does not request an accommodation"). Moreover, and perhaps most significantly, Plaintiff also does not allege that he was denied the accommodation of writing out his equations as needed. To the

6

contrary, Plaintiff states he was permitted to write out mathematical calculations and chose to only write out calculations that were "*above* the elementary level," *id.* at ¶ 44. Additionally, nothing in Plaintiff's Amended Complaint indicates he was prohibited from writing out *all* equations, if he had chosen to do so either in ExamSoft or on scrap paper. In short, Plaintiff's allegation that he failed his DMTM2 examination makes no connection to a failure-to-accommodate claim as there are no allegations that Plaintiff sought an accommodation for his exam, nor are there any allegations that he was denied a requested accommodation for the exam.

*Finally*, Plaintiff fails to allege that any Defendant "enforced rules that disproportionally impacted disabled people." *See Thurmon*, 191 F. Supp. 3d at 898. Plaintiff alleges that Professor Jenkins decided to cancel "numerous classes," a decision that clearly impacted all students, and one which Plaintiff does not allege specifically impacted him because of his ADHD. Am. Compl. ¶ 30. Furthermore, Plaintiff states he "scored higher than average on both class examinations." *Id.* at ¶ 62. By his own admission, Plaintiff received the same treatment as all students in his class, and, in fact, performed above-average in the course.

Indeed, the only connection Plaintiff attempts to make between his disability and his dismissal is that Professor Jenkins "gave Plaintiff a failing grade on the examination due to not writing out calculations in ExamSoft" and "removed the diabetes questions from the examination scores." *Id.* at ¶¶ 42, 45. But, Plaintiff does not plead that he requested an accommodation to allow him to use scratch paper rather than writing calculations in ExamSoft. This is fatal to Plaintiff's claim. Nor, does Plaintiff allege Professor Jenkins' removal of diabetes calculations *entirely* from **all** students' examination scores specifically was related to Plaintiff's disability. As in *Thurmon*, Plaintiff's claim should be dismissed because his allegations fail to "support an inference of intentional discrimination, refusal to provide reasonable modifications, or

disproportionate impact on disabled people." 191 F. Supp. 3d at 898-99; *see also Herdman v. Univ. of Ill.*, No. 96 C 8025, 1998 WL 774684, at *6 (N.D. Ill. Oct. 28, 1998) (dismissing claim where the "[c]ourt is unable to discern a tangible connection between [plaintiff]'s alleged disability and his consistent failure to meet the University's academic standards.").

### III. Plaintiff's Constitutional Claims (Counts II-IV) Should Be Dismissed.

In Counts II-IV, Plaintiff purports to bring an equal protection claim on the basis of disability and a due process claim, each pursuant to both the U.S. (Counts II and III) and state constitutions (Count IV). *See Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *3 (N.D. Ill. Sept. 18, 2009) ("federal and Illinois equal protection claims are co-extensive and evaluated under the same standard"). The claims in Counts II-IV should be dismissed for the following reasons.

#### A. Defendants are entitled to sovereign and qualified immunity.

As a preliminary matter, Section 1983 claims (Counts II and III) can only be brought against *persons*. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh Amendment bars federal claims against the State and its officials. *Haynes v. Ind. Univ.*, 902 F.3d 724, 731-32 (7th Cir. 2018). Counts II and III against CSU and the Individual Defendants in their official capacities should therefore be dismissed on both grounds. And, with respect to the Individual Defendants, because Plaintiff has not adequately pled a violation of Due Process or Equal Protection (as discussed below), the Defendants are entitled to qualified immunity. *See Vose v. Kliment,* 506 F.3d 565, 568-72 (7th Cir. 2007). State employees sued in their individual capacity "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. __, 138 S. Ct. 577, 589 (2018). The Court can

8

address these two elements in either order; if Plaintiff fails to satisfy either element, Defendants are entitled to qualified immunity in their individual capacities in Counts II and III. Here, Plaintiff cannot defeat either element of qualified immunity.

### B. Plaintiff fails to state an equal protection claim.

To state an Equal Protection claim premised on disability, a plaintiff must allege either (1) that he was treated disparately and there was no "rational basis" to do so, *see Schindler v. Univ. of Ill. at Chi. Legal Council*, No. 08 C 6703, 2009 WL 2601267, at *4 (N.D. Ill. Aug. 20, 2009), or (2) that he "is a member of a protected class, that []he was treated differently from similarly situated individuals outside the protected class, and that the Defendants acted with discriminatory intent," *Despard v. Bd. of Trs. of Ind. Univ.*, No. 1:14-CV-1987-WTL-DML, 2015 WL 4946112, at *5 (S.D. Ind. Aug. 18, 2015). Count II fails under either theory.

First, Plaintiff has not pled that he was subject to disparate treatment. Although Count II contains the conclusory statement that he was "willfully treated [] in a disparate manner because he has a type of disability," his factual allegations demonstrate that he was treated similarly to other students. *See e.g.,* Am. Compl. ¶ 31 ("Professor Jenkins yelled out to the classroom 'Ya'll [sic] don't know shit'"); *id.* at ¶ 34 ("Another student proceeded to ask Professor Jenkins if the examination should be completed in ink pen. To which Professor Jenkins yelled 'you guys can use crayons if you want'"). Likewise, he pled that students generally appeared to do poorly in Professor Jenkins' class. *Id.* at ¶ 62. Second, Plaintiff pled allegations demonstrating that there *was* a rational basis for his dismissal: that is, that he failed a course *twice*.

Although Plaintiff alleges CSU has allowed other students without disabilities to take a (unidentified) course for a third time, he does not allege these students were similarly situated. *Id.* at ¶ 74. "[F]actual allegations regarding similarly situated students are necessary to properly

9

plead the Plaintiff's equal protection claim." *See Despard*, 2015 WL 4946112, at *7. Students are not similarly situated simply because they attend the same school, but rather must "be *prima facie* identical in all relevant respects." *Racine Charter One. Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005); *see also Despard*, 2015 WL 4946112, at *7. Here, Plaintiff fails to allege similarities between himself and the two identified students; he fails even to allege that his supposed comparators were students in the same program or failed the same course. Am. Compl. at ¶ 74. As such, Plaintiff's equal protection claim cannot survive.

### C. Plaintiff fails to state a Due Process claim.

To state a Due Process claim, Plaintiff must allege that (1) he was deprived of a cognizable property or liberty interest and (2) the procedures by which he was deprived of that interest did not satisfy constitutional requirements. *See Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019). Plaintiff fails to meet this standard.

#### 1. *Plaintiff has not alleged a property interest.*

Plaintiff has failed to adequately allege a property interest. Although Count III includes the conclusory assertion that Plaintiff "had a constitutionally protected and clearly established property interest in his continued education," Am. Compl. ¶ 105, this vague allegation is insufficient. As the Seventh Circuit has held: "A graduate student does not have a federal constitutional right to a continued graduate education." *Bissessur*, 581 F.3d at 601. In order to assert a property interest, Plaintiff must allege that an identifiable, enforceable contractual promise existed and entitled him to a specific right. *See id*. at 601-02. Here, Plaintiff has not identified a specific document which he alleges to be contractual in nature, other than vaguely referring to, but not attaching to his Amended Complaint, the "College of Pharmacy Student Handbook." This is not sufficient to allege a contract that gives rise to a property interest. *See id.*

10

### 2. *Plaintiff has not alleged a liberty interest.*

Plaintiff claims to have a liberty interest in his "good name and reputation for his future academic and professional career." Am. Compl. ¶ 109. These allegations, however, are insufficient to state a claim. First, "the loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment." *Purdue*, 928 F.3d at 662 (citation and internal quotation marks omitted); *see also O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015). Furthermore, individuals do not have a constitutionally protected right to pursue a particular career. *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (an "interest in becoming a dentist is not one that the due process clause protects"); *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 942–43 (N.D. Ill. 2006) ("Though [plaintiff's] dismissal from the University may hamper his chances of completing medical school and becoming a physician, that by itself does not implicate a protected liberty interest.").

### 3. *Plaintiff received constitutionally-sufficient process.*

Even if Plaintiff had pled a protected interest—which he has not—his Due Process claims also should be dismissed on the basis that he has not alleged an actionable deprivation of any such interest. Plaintiff cannot base a Due Process claim on any alleged violation of CSU policies or procedures, as any "contractually-guaranteed university process is not protected by the federal Constitution." *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (affirming dismissal of due process claim where graduate student alleged she was not afforded certain "rights" provided under university's process, because any interest in contractually-guaranteed university process was not constitutionally protected). Rather, the Constitution requires only that, before being dismissed for academic reasons, "the student be informed of the nature of the faculty's dissatisfaction and that the decision be 'careful and deliberate.'" *Doe v.*

*Trs. of Ind. Univ.,* No. 120CV02006JRSMJD, 2022 WL 972792, at *9 (S.D. Ind. Mar. 31, 2022). Plaintiff's allegations make clear that he was aware of his failing exam grades and subsequent course failures. The Amended Complaint fails to allege facts sufficient to support a plausible inference that the process by which Plaintiff was dismissed was constitutionally inadequate.

### IV. Plaintiff's State Law Claims (Counts V-VII) Should be Dismissed.

#### A. Defendants are Immune from Suit in Federal Court on the State Law Claims.

Pursuant to the State Lawsuit Immunity Act, the State and individual state employees acting in their official and individual capacities are immune from suit in any court, except as provided in the Court of Claims Act. 745 ILCS 5/1. As such, Counts V-VII should be dismissed.[6]

#### B. Plaintiff's Breach of Contract Claim Should Be Dismissed.

To state a claim for breach of contract, Plaintiff must allege "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Doe v. Columbia Coll. Chi.*, 933 F. 3d 849, 858 (7th Cir. 2019). As a preliminary matter, Count V must be dismissed against the Individual Defendants because Plaintiff does not allege a contractual relationship with any of them. *See* Am. Compl. ¶ 118 (alleging "Plaintiff and Defendant CSU entered into a contract").

##### 1. *Plaintiff fails to identify the contract or how it was breached.*

Plaintiff fails to "point to an identifiable contractual promise that the defendant failed to honor." *See Fleming v. Chi. Sch. of Pro. Psych.,* No. 15 C 9036, 2017 WL 4310536, at *3 (N.D. Ill. Sept. 28, 2017); *see also Columbia Coll. Chi.*, 933 F. 3d at 858. Indeed, Plaintiff does not identify *any* specific contract in Count V, despite the opportunity to amend. Rather, he simply

---

[6] The Court of Claims has exclusive jurisdiction to hear all claims against the State, inclusive of CSU, founded upon any contract or sounding in tort. 705 ILCS 505/8. Moreover, a "claim against individual officers will be considered against the state, even when . . . the officials are sued in their individual capacities" if the claim is actually against the State. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (internal quotations omitted).

states that a "contract" was formed when he was offered admission by CSU. Am. Compl. ¶ 118. This is not the sort of specific, identifiable promise that gives rise to a breach of contract claim.

Plaintiff's references to CSU policies in the Factual Allegations section of his Amended Complaint do not save his claim. Plaintiff refers generally to the College of Pharmacy *Student Handbook*, Am. Compl. ¶¶ 24, 56, 103, 112, and (upon amendment) specifically to an "Honor Code" contained within the *Student Handbook*, *see id.* at ¶¶ 35-37.[7] Critically, the *Student Handbook* specifically states, "[t]his policy is neither a contract nor an offer to enter into a contract," and as such, cannot support a breach of contract claim. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 73 F. Supp. 3d 1030, 1041 (S.D. Ind. 2014), *aff'd*, 800 F.3d 843 (7th Cir. 2015).

Even the most generous reading of the Amended Complaint makes clear there is no actionable breach of contract claim here. First, Plaintiff has now added an allegation that Professor Jenkins violated the "Honor Code." *See* Am. Compl. ¶¶ 35-37. However, the *Student Handbook* does not—despite Plaintiff's assertion to the contrary—apply to "students and staff." *See* Am. Compl. ¶ 36. And, even if it *were* contractual *and* applicable to faculty, it would be a contract between the faculty member and CSU, not the faculty member and Plaintiff. Plaintiff cannot sue for breach of a contract to which he was not a party. *See e.g. NHI-2, LLC v. Wright Prop. Mgmt, Inc.*, No. 15 C 7913, 2018 WL 1138542, at *4 (N.D. Ill. Mar. 2, 2018). In addition, Plaintiff's new allegation that "each student" paid for printing services but was not provided a printer does not support a breach of contract claim. *See* Am. Compl. ¶¶ 76-78. There is no provision in the *Student Handbook* regarding printer fees or services, and Plaintiff fails to point to any contractual promise. Finally, Plaintiff's vague allegation that CSU "breached"

---

[7] *See* https://www.csu.edu/collegeofpharmacy/documents/Student%20Handbook%202022-2023.pdf at 36, 34. "[D]istrict courts may … consider … documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021). To the extent that such a document conflicts with the allegations of the complaint, the document controls. *See Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006).

unidentified "policies and procedures" by failing to provide "due process," *id.* at ¶ 121, does not support a claim. Plaintiff does not identify what due process he was entitled to, nor does he identify how CSU allegedly failed to provide due process.

### 2. *Plaintiff fails to allege that CSU acted arbitrarily, capriciously, or in bad faith.*

Moreover, Plaintiff must *both* point to a specific contractual promise which was breached vis-à-vis his course failure and dismissal, *and* allege that the "adverse academic decision" "was made *arbitrarily, capriciously, or in bad faith*." *Raethz v. Aurora Univ.*, 346 Ill. App. 3d 728, 732 (2004). This means a school "would not be liable even if it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis." *Columbia Coll. Chi.*, 933 F. 3d at 858. In other words, this Court "must find that [CSU] did not exercise its academic judgment at all." *See id*. Plaintiff has failed entirely to allege this necessary element.

In *DiPerna v. Chicago School of Professional Psychology*, the Seventh Circuit determined that the defendant had not acted arbitrarily or capriciously when it dismissed a student for plagiarism, as there was "*some* evidence that plagiarism occurred." 893 F. 3d 1001, 1008 (7th Cir. 2018) (emphasis original). Here, Plaintiff's own allegations indicate that CSU had at least some evidence which warranted his dismissal: he failed the class DMTM2 twice. Am. Compl. ¶¶ 42, 65, 69. A university's decision to dismiss a student for failing a class twice is clearly an academic judgment supported by some evidence. *See DiPerna*, 893 F. 3d at 1008. Therefore, Plaintiff fails to state a valid contract claim and Count V should be dismissed.

### C. Plaintiff's Negligence Claim Should Be Dismissed.

In order to state a claim for negligence, Plaintiff must plead "a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach." *See Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267. Plaintiff fails to plead duty or breach.

14

Plaintiff alleges that CSU, Jenkins, and Shah owed him a duty related to the quality of the educational services he received. However, educational malpractice claims "are not cognizable in Illinois." *See Waugh v. Morgan Stanley*, 966 N. E. 2d 540, 554 (2012). Plaintiff's claims against Prasad-Reddy and Rose in Count VI do not fare any better.[8] Plaintiff alleges they failed "to follow policy and procedure in grievance procedure" and "dismissal procedure." Am. Compl. ¶ 125. However, "where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines." *Rhodes*, 665 N.E.2d at 1272; *see also Blankenship v. Peoria Park Dis.*, 647 N.E. 2d 287, 291 (Ill. App. Ct. 1994). The "grievance" and "dismissal" procedures constitute "rules or internal guidelines" and cannot form the basis of a legal duty towards Plaintiff as a matter of law. *See Rhodes*, 665 N.E.2d at 1272.

Plaintiff also fails to allege breach of any duty. Plaintiff offers only an unsupported legal conclusion: Defendants "failed, neglected, and/or refused to discharge" their duties. *See* Am. Compl. ¶¶ 124-126. Finally, Plaintiff also does not allege facts sufficient to support a plausible inference that any breach of duty proximately caused him harm.

### D. Plaintiff's Negligent Infliction of Emotional Distress Claim Should Be Dismissed.

Illinois law only permits an NIED claim to lie where a "direct victim" such as Plaintiff has suffered a "contemporaneous physical injury or impact." *See Schweihs v. Chase Home Fin.*, 77 N.E. 3d 50, 59 (Ill. 2016); *see also Yates,* 2009 WL 1309516 at *3. Because Plaintiff fails to allege he suffered any physical injury or impact as a result of the actions of any of the named defendants, Count VII should be dismissed.

### Conclusion

For these reasons, Defendants respectfully request that this Court enter an order dismissing the Amended Complaint with prejudice.

---

[8] No other Individual Defendants are identified in Count VI, and thus they should be dismissed.

Respectfully submitted,

/s/ Lisa J. Parker

LISA J. PARKER
JOHN W. BORKOWSKI
MARY E. DEWEESE
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 526-1634 (TEL) | (312) 655-1501 (FAX)
lisa.parker@huschblackwell.com
john.borkowski@huschblackwell.com
mary.deweese@huschblackwell.com

***Attorney for Chicago State University***

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused the foregoing document to be filed with the Clerk of the court using the CM/ECF system to the following on this 3rd day of January, 2023:

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan, 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

*Attorney for Plaintiff*

        /s/ Lisa J. Parker
***Attorney for Chicago State University***

ii

HB: 4886-6064-9797.6