**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDEN GULLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-04425 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CHICAGO STATE UNIVERSITY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Branden Gulla enrolled in a four-year Doctor of Pharmacy degree program at Defendant Chicago State University ("CSU"). Gulla did not progress beyond his third year ("P3"), however, because he twice failed a class taught by Defendants Antoine Jenkins and Vicky Shah. After Gulla failed the class for the second time, CSU dismissed him from the program. Claiming that he endured hostile and distressing interactions with CSU employees, Gulla has now sued CSU, Jenkins, and Shah, as well as CSU administrators Zaldwaunaka Scott, Matthew Fete, Lalita Prassad-Reddy, Allison Rose, and Mohammad Newaz (collectively, "Individual Defendants"). The First Amended Complaint ("FAC") asserts claims of discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and Title II of the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12132 *et seq.*, claims under the United States and Illinois Constitutions, and state common law claims for breach of contract, negligence, and negligent infliction of emotional distress. Before the Court is Defendants' motion to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt No. 24.) For the reasons given below, the Court grants Defendants' motion and dismisses the FAC, but also grants Gulla leave to file a second amended complaint consistent with this memorandum opinion.

## BACKGROUND

For the purposes of Defendants' motion to dismiss, the Court accepts as true all well-pleaded facts in the FAC and views those facts in the light most favorable to Gulla as the non-moving party. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). The FAC alleges as follows.

In August 2017, Gulla began a four-year Doctor of Pharmacy degree program at CSU's College of Pharmacy. (Am. Compl. ¶ 17, Dkt. No. 19.) Gulla suffers from, and takes medication for, attention-deficit/hyperactivity disorder ("ADHD"), a condition that hinders his ability to concentrate. (*Id.* ¶¶ 22, 23.) After reporting his ADHD diagnosis to CSU's Abilities Office, Gulla was granted accommodations, including extended time to complete exams. (*Id.* ¶¶ 25, 39.)

During the second semester of his P3 year, Gulla enrolled in DMTM2 (Disease and Medication Therapy Management), a class taught by Jenkins. (*Id.* ¶¶ 18, 27.) Gulla provided Jenkins with an electronic copy of his accommodations letter, which she received and acknowledged. (*Id.* ¶ 28.) Nonetheless, Gulla failed DMTM2 by an unspecified margin, seemingly due to one exam in particular. (*Id.* ¶¶ 45, 47.) During that exam, which was administered electronically, Gulla did not type out his mathematical calculations. (*Id.* ¶ 42.) Jenkins did not award Gulla credit for a question that required calculations, and Gulla ultimately earned a failing grade on the exam. (*Id.*) Due to his ADHD, Gulla handwrites calculations instead of typing them electronically and that is what he did during the exam.[1] (*Id.* ¶ 44.) Later, once Jenkins received the scrap paper that Gulla used for calculations during the exam, it appears as if he awarded Gulla credit retroactively. (*Id.* ¶ 45.) Those extra points raised Gulla's total

---

[1] Although Gulla alleges that his ADHD "requires him to write out mathematical equations to maintain focus," it does not appear that this modification is included in his accommodation letter. (*Compare* FAC ¶ 44 *with* FAC ¶¶ 25, 39.)

exam score to a passing grade. (*Id.*) But three weeks later, Jenkins removed the question from the total exam score, a decision that appears to have affected everyone who took the exam. (*Id.*) Because of the point deduction, Gulla failed the exam by 0.5% and, in turn, failed DMTM2 altogether. (*Id.* ¶¶ 45, 47.)

Gulla alleges that Jenkins's conduct caused him to fail DMTM2. (*Id.* ¶ 30.) According to the FAC, Jenkins cancelled numerous classes during the semester but did not offer any replacements. (*Id.*) Gulla further alleges that Jenkins created a hostile classroom environment—one that exacerbated his ADHD symptoms and in turn made him anxious. (*Id.* ¶ 33.) Before the exam, Jenkins allegedly yelled "[Y'all] don't know shit" across the classroom. (*Id.* ¶ 31.) And when Gulla's classmate asked Jenkins whether the exam should be completed with an ink pen, Jenkins replied that "you guys can use crayons if you want." (*Id.* ¶ 34.)

After failing DMTM2, Gulla sought various forms of review. (*Id.* ¶¶ 46, 48, 49.) First, he pursued a review of the exam. (*Id.* ¶ 46.) According to the FAC, this review never occurred because the panel of professors that were supposed to evaluate the exam failed to appear. (*Id.* ¶ 47.) Next, Gulla filed a formal grievance with CSU. (*Id.* ¶ 48.) And, when that did not succeed, he appealed CSU's decision. (*Id.* ¶ 49.) In the end, Gulla's appeal was dismissed as untimely because he did not contact the Assistant or Associate Dean within ten days of the incident in question, as CSU's policy requires. (*Id.* ¶¶ 52, 53.) Gulla, however, disputes CSU's determination that his appeal was untimely. (*Id.* ¶ 54.) He alleges that he did in fact contact the relevant office within ten days of the incident in question, claiming that Rose, a CSU employee, did not process his appeal properly. (*Id.* ¶¶ 50, 54.) Gulla further claims that Newaz, also a CSU employee, told him that neither an attorney nor a student advisor could be present during the appeals process. (*Id.* ¶ 55.) This, according to Gulla, contravened CSU's policies as listed in its

Student Handbook. (*Id.* ¶ 56.)

With his appeal dismissed and his failing grade cemented, Gulla repeated P3 during the 2020–2021 academic year. (*Id.* ¶ 58.) In his second semester, he enrolled in DMTM2 once again. (*Id.* ¶ 59.) This time the class was taught by two professors, Jenkins and Shah. (*Id.*) Gulla passed every DMTM2 assignment except for the second exam, which he failed by an unspecified margin. (*Id.* ¶ 61.) After failing this exam, Gulla tried to attend Jenkins's review session to discuss his grade, but Jenkins did not attend the session. (*Id.* ¶ 63.) Gulla also alleges that Shah and Jenkins denied his request that they regrade the second exam. (*Id.* ¶ 67.) So, with a grade of 69.5% at the end of the semester, Gulla failed DMTM2 once again. (*Id.* ¶ 65.)

In May 2021, soon after Gulla failed DMTM2 for the second time, CSU dismissed him from the College of Pharmacy. (*Id.* ¶ 69.) According to the FAC, Prassad-Reddy, another CSU employee, informed Gulla that dismissals were made final on a case-by-case basis and that he need not worry. (*Id.* ¶ 70.) Yet Prassad-Reddy proceeded with the dismissal notwithstanding her earlier comment. (*Id.* ¶ 71.) Gulla further alleges that CSU had previously allowed non-disabled students to take a single course three times. (*Id.* ¶ 74.) As a result of his treatment by CSU and its employees, Gulla now suffers from anxiety and depression. (*Id.* ¶ 79.)

Gulla's FAC asserts seven causes of action. Count I alleges that CSU violated Section 504 of the Rehabilitation and the ADA. Counts II and III each assert claims pursuant to 42 U.S.C. § 1983, alleging that CSU violated the U.S. Constitution's Equal Protection and Due Process Clauses. Count IV asserts that all Defendants violated Article I, § 2 of the Illinois Constitution. Count V claims that CSU committed common law breach of contract. Count VI alleges common law negligence against all Defendants. And finally, Count VI alleges that

Individual Defendants engaged in negligent infliction of emotional distress ("NIED").

Defendants move pursuant to Rule 12(b)(6) to dismiss all claims.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Furthermore, "the complaint's factual allegations must raise the claim above a mere 'speculative level.'" *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). So, while a plaintiff need not plead detailed factual allegations, their complaint must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 716–17 (quoting *Twombly*, 550 U.S. at 555).

### I.    Count I

Count I asserts claims under the ADA and the Rehabilitation Act. To state a claim under either statutes, a plaintiff must show "(1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). In addition, a claim under the Rehabilitation Act "further requires that a plaintiff show that the program in which he was involved received federal financial assistance." *Id.*

Count I cannot survive because Gulla fails to plead at least two elements adequately. First, Gulla does not adequately plead that he was dismissed from his degree program based on his disability. Under both the Rehabilitation Act and the ADA, a plaintiff may establish discrimination on the basis of disability in any of three ways: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *A.H by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (internal quotation marks omitted).

The FAC does not satisfy any of these options. First, Gulla has not adequately pleaded that Defendants intentionally acted on the basis of his disability. Although Gulla alleges that CSU placed him on academic probation due to his disability—that is, because his ADHD forces him to handwrite calculations—his allegation is insufficient to state a claim. For one thing, Gulla's accommodations letter, as described in the FAC, only entitled him to extended time without any mention of his need to handwrite calculations. (FAC ¶ 39) And, in any event, the FAC indicates that Jenkins eventually awarded Gulla credit for his handwritten calculations. Although Jenkins ultimately deducted that credit, Gulla does not plead that this decision only affected him. Thus, it cannot reasonably be inferred from the allegations that Gulla failed DMTM2—and was therefore placed on academic probation—because of his disability.

Second, Gulla does not adequately plead that Defendants refused to provide him with reasonable accommodations, such as extended time. Even assuming that handwriting calculations is also a reasonable accommodation that Gulla required, he alleges that his calculations eventually received credit.

Third, Gulla does not plead that Defendants' conduct or rules disproportionately impacted disabled people. Although Jenkins cancelled class and failed to appear at an exam review session, Gulla does not allege that those decisions disproportionately impacted disabled students as opposed to the other students in the class. Similarly, when Jenkins allegedly yelled across the classroom, everyone present heard his utterance—disabled and non-disabled students alike.[2] For all of these reasons, Gulla does not sufficiently plead that he was excluded from participating in his degree program based on his disability.

Separately, Count I cannot survive because Gulla has failed to plead another required element sufficiently—specifically, that he is otherwise qualified to participate in the program in question. "In the context of a university, a person is 'otherwise qualified' if she is able to meet all of the program's requirements in spite of her disability, with or without a reasonable accommodation." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018), *as amended on denial of reh'g* (Feb. 26, 2018). "Academic decisions, such as whether a student is qualified for, or entitled to promotion within a program, must be left to the broad discretion of the academic institution." *Id.* What is more, "[a] court 'may not override [the academic institution's judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Id.* (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)).

All Gulla alleges in support of this element is that "complet[ing] three years of the program in a satisfactory manner" means that he was therefore "qualified to participate in the

---

[2] Although the FAC alleges that Gulla viewed Jenkins' statement ("[Y'all] don't know shit") as "a direct comment to him" (FAC ¶ 32), Gulla abandons this contention in his SAC. Instead, Gulla certifies that this "is not accurate" and that he "did not feel like Jenkins' statement was directed at [him] specifically." (Affidavit Certification of Pl. ¶ 7, Dkt No. 34.)

academic programs of CSU, including the College of Pharmacy."[3] (FAC ¶¶ 94, 95, Dkt. No. 19.) But this alone is not enough. CSU requires that students not fail classes. And Gulla failed DMTM2 not once but twice. Importantly, Gulla does not allege that he was denied reasonable accommodations during either attempt. Nor does Gulla allege any facts related to his prior academic performance beyond the use of a single adjective ("satisfactory"). Without more, Gulla's allegation that he was qualified simply based on undetailed past performance in other classes does not rise above a "mere 'speculative level.'" *Bell* at 716 (quoting *Twombly* at 555). Thus, in light of the deference courts owe universities' academic decisions, combined with precedent rejecting the sufficiency of analogous (but more detailed) allegations, Gulla has not adequately pleaded that he was otherwise qualified. *See Khan*, 879 F.3d at 845 (rejecting identical argument).

In sum, because Gulla failed to state a claim under the ADA or the Rehabilitation Act, Count I is dismissed without prejudice as against CSU.[4]

## II.     Counts II and III

Counts II and III, brought pursuant to 42 U.S.C. § 1983, assert that CSU violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution. But as Gulla concedes, § 1983 claims only lie against persons; as an "alter ego" of the state, "a state university is not a person within the meaning of § 1983 and therefore not subject to suits brought under § 1983." *Kaimowitz v. Board of Trs. of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991); *Malhotra v. Univ. of Ill. at Urbana-Champaign,* 77. F.4th 532, 536 (7th Cir.

---

[3] What is more, Gulla's opposition brief fails to respond to Defendants' argument that he was not otherwise qualified.

[4] The Court agrees with Defendants that as a matter of law claims under the ADA and the Rehabilitation Act cannot lie against individual defendants. *See, e.g., Ravenna v. Village of Skokie*, 388 F. Supp. 3d 999, 1004 (N.D. Ill. 2019). Count I, as against Individual Defendants, is therefore dismissed with prejudice.

2023) ("Because the [state university] is an alter ego of the state, [plaintiff] could not sue it under [§ 1983]"). Given that CSU, a state university, cannot be sued pursuant to § 1983, Counts II and III must be dismissed with prejudice.[5]

### III.    Count IV

In Count IV, Gulla alleges that Individual Defendants violated Article I, Section 2 of the Illinois Constitution, which provides that: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Gulla raises challenges under both the equal protection and the due process clauses of this provision.

### A.    Equal Protection

"Equal protection challenges brought under the Illinois Constitution are evaluated under the same standards as equal protection claims under the federal constitution." *Nevitt v. Langfelder*, 623 N.E.2d 281, 284 (Ill. 1993); *see also Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *3 n.4 (N.D. Ill. Sept. 18, 2009) ("[F]ederal and Illinois equal protection claims are co-extensive and evaluated under the same standard."). Because Gulla's claim is based on his disability, it receives rational basis review. *Ostrowski v. Lake County* 33 F.3d 960, 966 (7th Cir. 2022). Under this standard, a local policy "that treats two groups of people differently will pass muster so long as there is some rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* (internal quotation marks omitted). Such "decisions can survive rational basis review even if they only imperfectly achieve the legitimate government interest they aim to advance." *Id.*

Although Gulla alleges in Count II that he was "willfully treated . . . in a disparate

---

[5] As Defendant observes and Gulla concedes, Count III does not clearly identify the Defendant—or Defendants—to whom it applies. Gulla further concedes that because CSU is named in Count III, while Individual Defendants are not, it is intended to apply to CSU alone.

manner because he has a type of disability" (FAC ¶ 101), this allegation is too conclusory to pass

muster. For the most part, Gulla's allegations focus on the conduct of Jenkins. But Jenkins'

alleged invective was directed at the entire class—not just Gulla. Moreover, Gulla does not

allege that he was the only person affected by Jenkins' decision to remove a question from the

total exam score; nor does he allege that only disabled students were impacted. And, while Gulla

pleads that CSU previously allowed non-disabled students to take an unspecified class three

times (*id.* ¶ 74), this allegation, without additional information (of which there is none), is

insufficient to state a claim. Because Gulla does not sufficiently allege that he was treated in a

disparate manner, his equal protection clause claim is inadequately pleaded.

### B. Due Process

Gulla also asserts a due process claim, alleging that he held a "constitutionally protected

and clearly established property interest in his continued education at CSU" and was "den[ied] . .

. the right to appeal" his dismissal." (*Id.* ¶¶ 105, 114.) "Federal courts examining potential

violations of the Due Process Clause of the Illinois Constitution apply the same tests as applied

to potential violations of the Due Process Clause of the federal Constitution." *Rosario v. Ret. Bd.

of Policemen's Annuity & Ben. Fund of City of Chi*. No. 10 C 1512, 2013 WL 842651, at *7

(N.D. Ill. Mar. 6, 2013) *aff'd sub nom. Rosario v. Ret. Bd. of Policemen's Annuity & Ben. Fund

for City of Chicago*, 743 F.3d 531 (7th Cir. 2014). To state a due process claim, Gulla must first

allege that he was deprived of a cognizable property or liberty interest. *Doe v. Purdue Univ.*, 928

F.3d 652, 659-660 (7th Cir. 2019). Courts "address whether the procedures satisfied minimum

constitutional requirements of fairness only if the answer to that question is yes." *Id.* at 559.

#### i. Property Interest

This Circuit's precedent "involving due process claims in the context of university

discipline has focused on whether a student has a protected property interest in his education at a

state university." *Id.* Simply put, there is no "stand-alone property interest in an education at a state university, including a graduate education." *Charleston v. Board of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). As such, courts ask "whether the student has shown that he has a ***legally protected entitlement*** to his continued education at the university." *Purdue Univ.* at 559 (quotation omitted). Thus, in the context of higher education, a property interest becomes "a matter of contract between the student and university." *Id.* at 660 (citation omitted). To demonstrate such an interest, "a university student must do more than show that he has a contract with the university; he must establish that the contract entitled him to the specific right that the university allegedly took." *Id.* Here, "[g]eneralities won't do." *Id*

Gulla, however, offers only generalities. To allege a property interest, Gulla points only to a paragraph-long excerpt from the CSU Student Handbook that states, in relevant part, that "no person shall be excluded from participation, be denied the benefits of, or in any way be subject to discrimination in any program or activity at the University."[6] (Am. Compl. ¶ 24.) But this excerpted paragraph, without more, is not enough to state a claim. When alleging a property interest in education at a state university, a "student's complaint must be ***specific*** about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Purdue Univ.* at 559 (quotation omitted) (emphasis original). Gulla's FAC does not plead any of these details sufficiently. As a result, his due process claim cannot survive.[7]

---

[6] The Student Handbook, when read in full, makes clear that "[t]his policy is neither a contract nor offer to enter into a contract," an observation made by Defendants to which Gulla offers no substantive rebuttal. (Def. Mot. to Dismiss at 15, Dkt No. 25.)

[7] Gulla argues in his opposition brief that the FAC adequately pleads a breach of contract claim because it alleges "offer (at ¶ 118), acceptance (at ¶ 119), and an exchange of valuable consideration (at ¶ 120) constituting a valid contract, and a subsequent breach thereof by Defendant CSU (at ¶ 121) resulting in damages to Plaintiff (at ¶ 122)." (Opp'n at 7, Dkt. No. 33.) Even if this allegation is interpreted as the

### ii. Liberty Interest

Gulla also asserts a liberty interest in his "good name and reputation for his future academic and professional career," claiming that his dismissal from CSU impinged on both. (FAC ¶ 109.) These allegations are also insufficient to state a claim. "[T]he loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment," unless the stigma also altered the plaintiff's legal status. *Purdue Univ.* at 662 (internal quotation marks omitted). The FAC contains no such allegation. Furthermore, Gulla's interest in becoming a pharmacist is not one that the due process clause protects. *Cf. Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012) (affirming district court's holding that plaintiff's interest in becoming dentist is not protected by due process clause).

In sum, because Gulla has failed to allege either a sufficient equal protection or due process claim under the Illinois Constitution, Count VI is dismissed without prejudice against Individual Defendants.

## IV. Counts V, VI, and VII

Counts V, VI, and VII assert state law claims for breach of contract, negligence, and NIED, respectively. Count V is assert against CSU. Count VI is asserted against both CSU and Individual Defendants. And although somewhat unclear, Count VII appears to be asserted against Individual Defendants. All are state law claims.

---

basis of a property interest—not just a breach of contract claim—such recitations are far too general to state a claim. *See Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (explaining that similarly vague complaint "provide[d] no notice for the basis of [plaintiff's] claims aside from a mere recitation of their elements").

A.      **Claims Against CSU**

Defendants argue—without response—that CSU is entitled to immunity with respect to the claims in Counts V and VI. "The Illinois State Lawsuit Immunity Act, [745 ILCS 5/1], provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, [705 ILCS 505/8]." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Under the Court of Claims Act, the Court of Claims enjoys exclusive jurisdiction over "[a]ll claims against the State founded upon any contract entered into with the State of Illinois" and "[a]ll claims against the State for damages in cases sounding in tort." 705 ILCS 505/8. Within the meaning of the statute, the term "State" includes state universities. *See Thiele v. Bd. of Trs. of Ill. State Univ.*, 35 F.4th 1064, 1067 (7th Cir. 2022) (affirming that students' contract claim against state university belonged in the Court of Claims rather than a federal district court). Indeed, the statute even names CSU among the state institutions granted immunity. 705 ILCS 505/8.

Count V alleges that Gulla entered into a contract with CSU, one that was subsequently breached. "Whether [a] student[] ha[s] a good contract claim [against a state university] is a question for the state judiciary. In Illinois this means the Court of Claims, which has exclusive jurisdiction of contract suits against public bodies." *Thiele*, 35 F.4th at 1067. For this reason, Count V is dismissed based on CSU's immunity.

The Court of Claims Act also "ousts both state and federal courts of jurisdiction over all tort suits against the Board of Regents, conferring exclusive jurisdiction upon the Illinois Court of Claims." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.3d 775, 778 (7th Cir. 1991). Thus, the Court must also dismiss Count VI—Gulla's negligence claim—based on the Illinois state law of immunity. The dismissals of Counts V and VI are without prejudice to Gulla pursuing his claims in the Illinois Court of Claims.

### B.    Claims Against Individual Defendants

Counts VI and VII assert negligence and NIED claims against Individual Defendants. "Where a charged act of negligence 'arose out of the State employee's breach of a duty that is imposed on him ***solely*** by virtue of his State employment, sovereign immunity will bar maintenance of the action' in any court other than the Illinois Court of Claims." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). Thus, "[t]he question to ask. . . is whether [the defendant] breached a duty held uniquely by State employees holding the job at issue." *Turpin v Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009). If so, immunity attaches. *Id.* Three prongs guide this inquiry: "[A] claim against a state official or employee is claim against the state when 'there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" *Murphy v. Smith*, 844 F.3d 599, 653 (7th Cir. 2016) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)).

Here, Gulla does not allege that the CSU employees acted beyond the scope of their authority. Nor does he sufficiently allege a cognizable breach of duty owed to him by Defendants independent of their state employment. Lastly, and most fatally, the actions of which he complains—teaching, grading, and student discipline—are all duties squarely within the ambit of either educators (teaching and grading) or education administrators (student discipline). *See Healy*, 549 N.E.2d at 1248 (holding that state university instructors performed their duties as state employees when they allegedly failed to teach gymnastics safely). For these reasons, Counts VI and VII are dismissed without prejudice as Individual Defendants are immune from suit in any court other than the Illinois Court of Claims.

## V.    Leave to Amend

Finally, Gulla seeks leave of Court to correct the FAC's errors and omissions. Counsel submits the Certification of Branden Gulla, who attests that the operative FAC contains numerous factual mistakes. This is on top of its legal errors and pleading deficiencies, as described above. "[W]hen justice so requires," the Court should freely give leave to amend. Fed. R. Civ. P. 15(a)(2). Having considered the factual and legal deficiencies of the FAC, as well as the Seventh Circuit's guidance that normally a plaintiff "should be given *at least* one opportunity to try to amend her complaint before the entire action is dismissed," *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 310 (7th Cir. 2018), the Court will allow Gulla one final opportunity to state a claim with respect to the claims that have not been dismissed with prejudice or that Gulla is not required to pursuant in the Illinois Court of Claims.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss (Dkt. No. 24) and grants Gulla's cross-motion to amend his FAC (Dkt. No. 34) so that he may remedy the deficiencies identified herein.

ENTERED:

Dated:  September 25, 2025

_____
Andrea R. Wood
United States District Judge

15